FILED

## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

2013 FEB 22  A 9 30

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

| | | |
|---|---|---|
| Xenon Health LLC<br>1155 South Robertson Blvd<br>Los Angeles, CA 90035<br><br>and<br><br>Haroon W. Chaudhry, M.D.<br>1306 South Genesee Avenue<br>Los Angeles, California 90019<br><br>Plaintiffs<br><br>vs.<br><br>Mirza Baig<br>649 Deerfield Farm Ct.<br>Great Falls, VA 22066<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:13cv244<br>LOG/TCB |

### COMPLAINT

Plaintiffs, Xenon Health LLC ("Xenon LLC") and Haroon Chaudhry, M.D. ("Dr. Chaudhry") state the following for their Complaint against the Defendant, Mirza Baig ("Baig"):

### PARTIES

1. Plaintiff Xenon Health LLC provides anesthesia services to medical facilities and management services to companies that perform anesthesia at medical facilities. Xenon's principal place of business is in Los Angeles, CA.

2. Plaintiff Haroon Chaudhry, M.D. is a physician licensed to practice medicine in several states. Chaudhry resides in Los Angeles, CA and is Xenon LLC's President and Chief Executive Officer.

1

3. Defendant Mirza Baig is an individual resident and citizen of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy exceeds $75,000 exclusive of interest and costs, and is between citizens of different states.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because Defendant Baig resides in this judicial District and his acts and omissions described herein occurred partially or completely in this judicial District.

## FACTUAL BACKGROUND

6. Xenon LLC is a California-based company that provides anesthesia services to medical facilities, and management services to companies that provide anesthesia at medical facilities throughout the United States.

7. Prior to July 2011, Xenon LLC provided its services primarily to clients in Ohio.

8. In early 2011, Xenon LLC expended significant resources on business development in an effort to expand its business into the State of Texas.

9. Dr. Chaudhry, Xenon LLC's CEO identified several Texas medical facilities which were in need of the type of anesthesia services provided by Xenon LLC.

10. Dr. Chaudhry then secured the firm commitment of the owners of the following two Texas medical facilities to engage the anesthesia services of Xenon LLC: the Gastroenterology Diagnostic Center in Tomball, Texas ("GDC-Tomball") and the Westover Hills Gastroenterology Center in San Antonio, Texas ("WHGC") (collectively, the "Texas Clients").

11. Under the corporate practice of medicine doctrine of the State of Texas, as codified by Tex. Occ. Code §164.052(a)(17), a Texas medical licensee or license applicant is prohibited from directly or indirectly aiding or abetting the practice of medicine by a person, partnership, association, or corporation that is not licensed to practice medicine by the Texas medical board.

12. At the time he secured the commitment of GDC-Tomball and WHGC, Dr. Chaudhry was not yet licensed by the Texas medical board.

13. To service the needs of Xenon LLC's new Texas Clients while complying with Texas law, Xenon LLC sought a Texas physician to temporarily own the Texas-based entity which would provide anesthesia services to the Texas Clients, while Dr. Chaudhry was in the process of obtaining his license to practice medicine in Texas.

14. In furtherance of that effort in May 2011, Fahim Hashim ("Hashim"), Xenon LLC's Chief Operating Officer, contacted his childhood friend, longtime advisor and business associate Mirza Baig, who introduced Dr. Mutjaba Ali Khan ("Dr. Ali Khan") to Xenon LLC and Dr. Chaudhry.

15. Dr. Ali Khan is a first cousin of Defendant Baig, and a physician licensed in the State of Texas. Dr. Ali Khan is an internal medicine doctor and does not practice in the area of anesthesiology.

16. Dr. Chaudhry and Dr. Ali Khan reached an agreement to form a Texas business entity for the purpose of providing anesthesia services in Texas.

17. Pursuant to the agreement Dr. Ali Khan would form the Texas entity and serve as its managing member up until the time Dr. Chaudhry obtained his license to practice medicine in the State of Texas.

18. The Texas entity would enter into a management service contract with Xenon LLC, whereby (i) Xenon LLC would supply comprehensive management services (e.g., recruiting anesthesiologists, providing billing services, scheduling, etc.) to the Texas entity, including with respect to the servicing of the Texas Clients, in return for a monthly service fee of $750,000; (ii) Xenon LLC would manage all of the anesthesia services provided at the Texas Clients on behalf of the Texas entity; (iii) the Texas entity would grant Xenon LLC access to company bank accounts for management purposes; and (iv) the Texas entity would reimburse Xenon LLC for expenses incurred while providing the management services.

19. In July 2011, Dr. Ali Khan established Xenon Anesthesia of Texas PLLC ("Xenon TX"), and Xenon LLC and Xenon TX entered into an Exclusive Management Services Agreement.

20. Since the execution of the Exclusive Management and Services Agreement and continuing through the present, Xenon LLC has fulfilled and continues to fulfill all of its obligations required by that agreement.

21. In concert with Xenon LLC and Xenon TX entering into the Exclusive Management and Services Agreement, Dr. Chaudhry and Dr. Ali Khan entered into an Equity Interest Assignment Agreement as well as a Purchase and Sale Agreement.

22. Pursuant to these agreements Dr. Ali Khan was required to sell to Dr. Chaudhry all of his interest in Xenon TX within seven business days of notification that Dr. Chaudhry had become licensed to practice medicine in the State of Texas.

**Interference with Xenon LLC's Business**

23. In December 2011, Hashim had a falling out with Xenon LLC, resulting in his separation from Xenon LLC.

24. In that same time frame, Defendant Baig, Hashim and Dr. Ali Khan began to make concerted and coordinated efforts to interfere with Xenon LLC's business operations and interests in Texas and elsewhere.

25. Defendant Baig and Hashim acted in concert to induce the Texas Clients to cease all further business contact with Xenon LLC and Dr. Chaudhry.

26. On December 23, 2011, pursuant to coercion and at the direction of Defendant Baig, Xenon TX wrongfully terminated its Exclusive Management Services Agreement with Xenon LLC, revoked its power of attorney granted to Dr. Chaudhry, and took measures to deny Dr. Chaudhry and Xenon LLC access to Xenon TX's bank accounts.

27. On December 23, 2011, pursuant to coercion and at the direction of Defendant Baig, Dr. Ali Khan wrongfully terminated the Purchase and Sale Agreement with Dr. Chaudhry.

28. At the time Xenon TX terminated its Exclusive Management Services Agreement with Xenon LLC, Xenon TX had not paid to Xenon LLC the contractually required monthly management service fee since July 2011.

29. Additionally, at the direction and under the coercion of Defendant Baig, Dr, Ali Khan began misrepresenting to other business acquaintances that the Purchase & Sale Agreement, Exclusive Management Services Agreement and Equity Interest Assignment Agreement with Dr. Chaudhry and Xenon LLC were null and void.

30. On December 28, 2011, Asim Ghafoor ("Ghafoor"), acting at the direction and under the coercion of Defendant Baig, and as agent of and counsel to Dr. Ali Khan and Xenon TX, sent a fax to Xenon LLC's billing vendor (Northeast Medical Billing in Syosset, NY), instructing Northeast Medical Billing to cease further business communication with Xenon LLC regarding Xenon TX. Further, Ghafoor demanded that Northeast Medical Billing deliver all past billing information "related to the two Texas medical practices for which your firm has been collecting on behalf of Dr. Ali Khan and cease providing any past or future details to Dr. Chaudhry or Xenon LLC for these practices." The two medical practices referred to by Ghafoor are WHGC and GDC-Tomball.

31. Ghafoor is the longtime counsel of Defendant Baig and maintains a law practice near Defendant Baig's residence in the Commonwealth of Virginia.

32. Xenon LLC and Northeast Medical Billing had entered into a billing agreement. Xenon TX and Northeast Medical Billing did not have a billing agreement between themselves.

33. On January 16, 2012, Ghafoor, acting at the direction and under the coercion of Defendant Baig, and as counsel and agent for Dr. Ali Khan/Xenon TX, wrote to WHGC announcing Xenon TX's suspension of the Exclusive Management

Services Agreement with Xenon LLC and directing that WHGC cease further dealings with Xenon LLC and Dr. Chaudhry.

34. Also on January 16, 2012, Ghafoor, acting at the direction and under coercion of Defendant Baig, and as counsel and agent for Dr. Ali Khan and Xenon TX, wrote to GDC-Tomball announcing Xenon TX's suspension of its management services agreement with Xenon LLC and directing that GDC-Tomball cease further dealings with Xenon LLC and Dr. Chaudhry.

35. On or about January 17, 2012, at the direction and under the coercion of Defendant Baig, Hashim visited both of the Texas Clients.

36. Hashim informed the office managers of both Texas Clients that there had been "management changes" at Xenon TX and that there was a "new medical director."

37. Hashim informed the office manager of GDC-Tomball that he and Dr. Ali Khan were taking over the business relationship with GDC-Tomball.

38. Ghafoor contacted Northeast Medical Billing again on or about January 18, 2012 to repeat his request that all billing information be diverted to Dr. Ali Khan.

39. On or about January 18, 2012, a college classmate and business associate of Hashim and Defendant Baig, Aamir Abedeen ("Abedeen"), left a voicemail with Dr. Yoko Hirose, an agent of Xenon TX who provides anesthesia to patients at GDC-Tomball.

40. In the voicemail, Abedeen falsely stated that he was the new practice manager and asked Dr. Hirose to provide certain confidential information, including compensation history.

41. On January 19, 2012, Hashim emailed Dr. Ali Khan stating: "I have visited both Dr. Jamali and Dr. Hasan as requested." Dr. Shabbir Jamali owns and operates GDC-Tomball. Dr. Mosaab Hasan owned and operated WHGC in January 2012. In his January 19, 2012 email, Hashim further stated: "Current volume is about 12 to 15 procedures a day for 5 days a week for both clients combined. Annualized revenue should be well over $1 million for both centers combined."

42. Dr. Ali Khan replied to Hashim's January 19, 2012 email with the words "Excellent! We'll discuss in detail tomorrow."

43. On January 20, 2012, Hashim followed up with an email to Dr. Ali Khan stating that he "can be in Houston Tuesday afternoon and we should perhaps ... arrange a meeting with ... Dr. Jamali so we can talk through everything." Hashim ended his January 20, 2012 email saying that he would call Dr. Ali Khan the following day.

44. On or about January 25, 2012, Abedeen contacted Xenon LLC's billing company Northeast Medical Billing through multiple phone calls and claimed to be working on behalf of Dr. Ali Khan.

45. At the direction of, and with Defendant Baig's full knowledge, in February 2012, Hashim established Strategy Anesthesia LLC ("Strategy") for the purpose of competing with Xenon LLC.

46. Defendant Baig provided start-up funds for and services to Strategy with the intention of becoming a co-investor.

47.  Strategy began using Xenon's confidential business information in an attempt to steal Xenon LLC's business and provide anesthesia services to Xenon LLC's clients and most promising client leads.

48.  This activity was conducted in blatant violation of the restrictive covenants in Hashim's Employment Agreement with Xenon LLC, which prohibited Hashim from using Xenon's confidential business information.

49.  Defendant Baig had previously reviewed and had full knowledge of the Employment Agreement between Hashim and Xenon LLC and knew of those restrictive covenants. Defendant Baig also had previously reviewed and had full knowledge of the (i) Exclusive Management Services Agreement between Xenon LLC and Xenon TX, (ii) Purchase and Sale Agreement between Dr. Chaudhry and Dr. Ali Khan, and the (iii) Equity Interest Assignment Agreement between Dr. Ali Khan and Dr. Chaudhry.

50.  According to a sworn affidavit by Hashim, Defendant Baig was not only fully aware of Hashim/Strategy's intentions of approaching Xenon LLC existing and prospective clients, but was the mastermind behind the efforts to interfere with Xenon LLC business relationships.

**Dr. Chaudhry Obtains His License to Practice Medicine in Texas**

51.  Dr. Chaudhry obtained an administrative medicine license issued by the Texas Medical Board on October 1, 2012.

52. Such administrative medicine license authorizes Dr. Chaudhry to own and manage a Texas professional limited liability company such as Xenon TX which provides anesthesia-related services.

53. On October 9, 2012, Xenon LLC wrote to Dr. Ali Khan notifying him that Dr. Chaudhry had obtained his Texas medical license; requesting certain information Xenon TX was obligated to provide pursuant the Purchase and Sale Agreement; and requesting, as required by the Purchase and Sale Agreement, that closing on the sale of Xenon TX to Dr. Chaudhry take place within seven business days.

54. Acting under the direction and coercion of Defendant Baig, Dr. Ali Khan did not respond to the request for information from Xenon LLC and did not comply with the requirement of the Purchase and Sale Agreement that the sale of Xenon TX to Dr. Chaudhry occur within seven business days of the date of Dr. Chaudhry's written notification to Dr. Ali Khan.

55. On November 7, 2012, in *Xenon Health LLC and Haroon Chaudhry, M.D. v. Xenon Anesthesia of Texas PLLC and Mujtaba Ali Khan, D.O.*, Cause No. 12-01-00014-CV (District Court of Montgomery County, Texas), presiding Judge Cara Woods issued a Temporary Injunction against Xenon TX and Dr. Ali Khan (the "Texas Temporary Injunction"). The order stated that "after considering the evidence received and the arguments of counsel, the Court finds and concludes that Plaintiff {*sic*} likely will prevail on the trial of this cause". The order also enjoined Xenon TX and Dr. Ali Khan from, among other things, failing to disclose Xenon TX's financial information, making expenditures outside of the

ordinary course of business, and from renegotiating contracts with Xenon TX's business partners.

56. According to a bank account statement provided to Dr. Chaudhry, as of November 9, 2012, Xenon TX's bank deposit account with Chase Bank, NY had a balance of approximately four hundred and seventy thousand dollars ($470,000).

57. Despite the Temporary Injunction and the terms and provisions of the Exclusive Management Services Agreement, Xenon TX and Dr. Ali Khan, under the coercion and at the direction of Defendant Baig, have refused to communicate any information about Xenon TX's bank deposit account since November 9, 2012.

58. Since July 2011, Xenon TX has not paid the seven hundred and fifty thousand dollars ($750,000.00) monthly service fee owed to Xenon LLC.

59. In violation of the Exclusive Management Services Agreement, Xenon TX has not reimbursed Xenon LLC business expenses incurred in managing Xenon TX in the amount of one hundred and twenty-three thousand one hundred and sixty-nine dollars and seventy-six cents ($123,169.76).

**Mirza Baig - The "Mastermind"**

60. On January 10, 2013, Hashim testified in a sworn affidavit that Defendant Baig was the mastermind and planner behind a concerted effort to interfere with and destroy Xenon LLC's business for Defendant Baig's and Hashim's personal financial gain.

61. According to Hashim, beginning in December 2011, Defendant Baig became the central figure in a plan involving Hashim, Dr. Ali Khan and himself. He conspired and acted in concert with Hashim and Dr. Ali Khan to (a) cause the termination of the Exclusive Management Services Agreement between Xenon TX and Xenon LLC; (b) cause the termination of the Purchase and Sale Agreement and the Equity Interest Assignment Agreement between Khan and Chaudhry; (c) oversee and assist Hashim in connection with Hashim's misuse and misappropriation of Xenon LLC's confidential business information; (d) oversee and assist Hashim in connection with the violation of Hashim's Employment Agreement; and (e) assist Hashim in interfering with Xenon LLC's sales efforts and prospective contractual relations with client leads, including, but not limited to, Dr. David Garcia in San Antonio, TX,  Dr. Umed Shah, in Hollywood, MD, and Dr. Junaid Siddiqui in Round Rock, TX.

62. According to Hashim, Defendant Baig "was the mastermind and master planner of all activity that occurred regarding {Xenon TX} because neither Dr. Ali Khan nor his attorney, Asim Ghafoor, would take any action without Mirza Baig's approval."

63. In the affidavit, Hashim testified that he personally "discussed the signed contract {he} had with Xenon Health {LLC}" with Defendant Baig.  Furthermore, "{b}ased on all the data collected, Mirza Baig decided to explore the contract Dr. Chaudhry had with Dr. Ali Khan concerning Xenon TX."

64. Defendant Baig and Hashim "realized in this process that if Dr. Ali Khan was able to terminate his contract with Dr. Chaudhry and take control of the two Texas clients of Xenon TX, then that could be a financial gain."

65. "Furthermore, Dr. Ali Khan wanted to settle with Dr. Chaudhry and end any dispute with Xenon Health {LLC}. Mirza Baig felt, however, that there was a lot of financial gain by gaining control of the 2 Texas clients, and convinced Dr. Ali Khan not to settle any dispute with Dr. Chaudhry and Xenon Health {LLC}."

66. Hashim stated: "Asim Ghafoor was Dr. Ali Khan's attorney and was always in the loop on legal decisions, but Mirza Baig always made the final decisions and told everyone what to do."

67. "Mirza Baig personally assisted Dr. Ali Khan in getting control of the bank account of Xenon TX and told me when to go to Texas to help Dr. Ali Khan gain control of the clients of Xenon TX."

68. "Mirza Baig, Asim Ghafoor and I had numerous calls and meetings about what to do, and I did suggest several courses of actions that we could take to gain control of Xenon TX, but Mirza Baig always made the final decisions."

69. According to Hashim: "After a Texas temporary restraining order was served on Dr. Ali Khan in January 2012, I started becoming less involved in Mirza Baig's plan for Xenon TX. I questioned Mirza Baig several times but was told that the plan was still the same and we would be running the company and that Dr. Chaudhry would be out."

70. On December 14, 2011, Hashim explicitly discussed the Purchase and Sale Agreement in an email to Defendant Baig, stating that "{o}ur best approach is to

cite the illegality of the contract … and us that leverage to make the contract void, take control of {Xenon TX} and force {Chaudhry} into a settlement while we take over the money and the clients."

71. In another email sent to Defendant Baig the same day, Hashim explained that "we have an opportunity to take full control of Xenon Anesthesia of TX, kick out Haroon {Chaudhry} and take control of the revenues and 3 TX contracts that will bring in well over $3 million per year … This is a great opportunity for all of us."

72. In an email dated December 21, 2011, Hashim asks Defendant Baig to "make sure that {Dr. Ali Khan} brings all his incorporation records and multiple IDs with him to Maryland so that {another business associate} will have everything he needs to assist {Dr. Ali Khan} on Monday {regarding the Xenon TX bank account}."

73. Defendant Baig also sent emails to Hashim. On December 24, 2011, he forwarded to Hashim correspondence sent from Xenon LLC's company lawyer.

74. On January 6, 2012 he confirmed a meeting with Hashim.

75. On January 19, 2012, Hashim sent an email to Defendant Baig and Ghafoor, seeking guidance. He begged Defendant Baig and Ghafoor to "PLEASE HELP ME AND ADVISE WHAT I NEED TO DO SINCE THESE ARE MUJTABA {ALI KHAN}'S CLIENTS AND HAROON {CHAUDHRY} HAS INTERFERED WITH MUJTABA {ALI KHAN}'S CLIENTS AFTER HE WAS TOLD NOT TO. I NEED TO GO AND TAKE ACTION NEXT WEEK." (uppercase in the original).

14

76. On January 29, 2012, Hashim invited Defendant Baig to participate on a conference call which included Dr. Ali Khan and Ghafoor. The agenda of the call was "1. Feedback from Dr. Bhuriwala. 2. Plan the meeting with Dr. Jamali for next week. 3. Discuss billing and next steps." "Dr. Bhuriwala" refers to Dr. Ali Akbar Bhuriwala, a Houston-area physician and business associate of Dr. Ali Khan.

77. On February 5, 2012, Defendant Baig sent Hashim an email complaining that he was "here with Mujtaba {Ali Khan} and Asim {Ghafoor}. They have a half a dozen complaints about {Hashim's} conduct. Can you please call me?"

78. Hashim replied to Defendant Baig's February 5, 2012 complaint with a three-page email detailing his efforts to contact GDC-Tomball as well as the involvement of Dr. Akbar Bhuriwala on behalf of Dr. Ali Khan and Defendant Baig.

79. On February 7, 2012, Defendant Baig directly called Dr. Chaudhry several times. During the phone conversation, Defendant Baig stated that he was coming to Los Angeles and that he wanted to meet with Dr. Chaudhry concerning the lawsuit that Xenon LLC had filed against Dr Ali Khan. Defendant Baig also threatened Dr. Chaudhry, claiming that he would have federal charges brought against Dr. Chaudhry and that Dr. Chaudhry would go to jail.

80. On February 12, 2012, in an email nominally sent to Hashim's lawyer Faisal Gill, but manifestly intended for Defendant Baig and Ghafoor (who are copied), Hashim recommends that "{Baig/Ghafoor} terminate Ava {Neroda, CEO of Northeast Medical Billing}". He adds that Dr. Ali Khan "should take control of

billing ASAP before there is another injunction and he is stuck with Ava, who is not sharing information with him."

81.    On May 2, 2012, Defendant Baig called and texted Dr. Chaudhry again to discuss Xenon TX and Dr. Ali Khan.

## COUNT I: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

82.    Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 81, as though fully set forth herein.

83.    Dr. Chaudhry has, or had, a valid and enforceable Purchase and Sale Agreement with Dr. Ali Khan.

84.    Dr. Chaudhry has, or had, a valid and enforceable Equity Interest Assignment Agreement with Dr. Ali Khan.

85.    At all times relevant herein, Defendant Baig had knowledge of the foregoing contractual relationships.

86.    Defendant Baig intentionally employed improper and wrongful conduct including, but not limited to, misrepresentations, deceit, defamation, duress, undue influence, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing causing Dr. Ali Khan to wrongfully breach and/or terminate his contractual relationships with Dr. Chaudhry.

87.    As a direct and proximate result of that conduct, Dr. Chaudhry has suffered and will continue to suffer damage. That damage was an intentional and reasonably foreseeable consequence of Defendant Baig's conduct.

88. Defendant Baig's actions constitute a tortious interference with contractual relations for which he is liable to Dr. Chaudhry in an amount to be determined at trial but not less than One Million Dollars ($1,00,000.00).

89. Defendant Baig's conduct evidences malice or such a reckless disregard for the rights of Dr. Chaudhry as to justify an award of punitive damages in an amount to be determined at trial.

90. Additionally, Xenon LLC has, or had, a valid and enforceable Exclusive Management Services Agreement with Xenon TX.

91. At all times relevant herein, Defendant Baig had knowledge of the foregoing contractual relationship.

92. Defendant Baig intentionally employed improper and wrongful conduct including, but not limited to, misrepresentations, deceit, defamation, duress, undue influence, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing causing Xenon TX to wrongfully breach and/or terminate its contractual relationship with Xenon LLC.

93. As a direct and proximate result of that conduct, Xenon LLC has suffered and will continue to suffer damage. That damage was an intentional and reasonably foreseeable consequence of Defendant Baig's conduct.

94. Defendant Baig's actions constitute tortious interference with contractual relations for which he is liable to Xenon LLC in an amount to be determined at trial, but not less than Five Million Two Hundred Fifty Thousand Dollars ($5,250,000).

95.    Defendant Baig's conduct evidences malice or such a reckless disregard for the rights of Xenon LLC as to justify an award of punitive damages in an amount to be determined at trial.

96.    Furthermore, Xenon LLC has, or had, a valid and enforceable Employment Agreement with Hashim.

97.    At all times relevant herein, Defendant Baig had knowledge of the foregoing contractual relationship.

98.    Defendant Baig intentionally employed improper and wrongful conduct including, but not limited to, misrepresentations, deceit, defamation, duress, undue influence, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing causing Hashim to violate the terms of his contractual relationship with Xenon LLC.

99.    As a direct and proximate result of that conduct, Xenon LLC has suffered and will continue to suffer damage.  That damage was an intentional and reasonably foreseeable consequence of Defendant Baig's conduct.

100.    Defendant Baig's actions constitute tortious interference with contractual relations for which he is liable to Xenon LLC in an amount to be determined at trial but not less than One Million Dollars ($1,000,000).

101.    Defendant Baig's conduct evidences malice or such a reckless disregard for the rights of Xenon LLC as to justify an award of punitive damages.


**COUNT II: TORTIOUS INTEREFERENCE WITH BUSINESS EXPECTANCY**

102. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 101, as though fully set forth herein.

103. Xenon LLC had a tangible and objective business and contract expectancy with, among other client leads, Dr. David Garcia in San Antonio, TX, Dr. Umed Shah in Hollywood, MD, and Dr. Junaid Siddiqui in Round Rock, TX.

104. At all times relevant herein, Defendant Baig had knowledge of the foregoing business and contract expectancies.

105. Defendant Baig, employing improper and wrongful conduct including, but not limited to, misrepresentation, coercion, deceit, defamation, duress, common law conspiracy, statutory business conspiracy, unethical conduct, overreaching, and sharp dealing, intentionally interfered with the foregoing business and contract expectancies.

106. As a direct and proximate result of said conduct, Xenon LLC has suffered injury, which was an intentional and reasonably foreseeable consequence of Defendant Baig's conduct.

107. Defendant Baig's actions constitute a tortious interference with contract expectancy for which he is liable to Xenon LLC in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

108. Defendant Baig's conduct evidences malice or such a reckless disregard for the rights of Xenon LLC as to justify an award of punitive damages.

## COUNT III: BUSINESS CONSPIRACY
## PURSUANT TO VA. COD ANN. § 18.2-499

109.    Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 108, as though fully set forth herein.

110.    By the conduct described herein, including inducement of breach of contract, Defendant Baig has improperly and wrongfully combined, associated, agreed, mutually undertaken or acted in concert with Hashim, Dr. Ali Khan, Xenon TX, Dr. Ali Akbar Bhuriwala, and/or other unknown persons, for the purpose of willfully and maliciously injuring Xenon LLC in its reputation and business relations in violation of Va. Code Ann. § 18.2-499.

111.    Defendant Baig, Hashim, Dr. Ali Akbar Bhuriwala, Dr. Ali Khan, and Xenon TX collectively misappropriated and misused Xenon LLC's confidential client information for the purpose of soliciting Xenon LLC's client leads away from Xenon LLC.

112.    Defendant Baig (in concert with Hashim, Dr. Ali Khan, Xenon TX, and Dr. Ali Bhuriwala) acted intentionally, purposefully, and without lawful justification, to injure Dr. Chaudhry and Xenon LLC in their reputation and business relations.

113.    As a direct and proximate result of said conduct, Xenon LLC and Dr. Chaudhry have suffered injury, which was an intentional and reasonably foreseeable consequence of Defendant Baig's conduct.

114.    Defendant Baig's actions constitute a violation of § 18.2-499 for which he is liable to Xenon LLC and Dr. Chaudhry under § 18.2-500(A) in the amount of three-fold the damages suffered by Xenon LLC and Dr. Chaudhry, or three-fold the gain achieved by Defendant Baig, and Plaintiffs' reasonable attorneys' fees.

20

## COUNT IV: COMMON LAW CONSPIRACY TO INDUCE BREACH OF CONTRACT

115. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 114, as though fully set forth herein.

116. By the conduct described herein, Defendant Baig has improperly and wrongfully combined, associated, agreed, mutually undertaken or acted in concert with Hashim, Dr. Ali Khan, and Xenon TX for the purpose of inducing Dr. Ali Khan to breach his Purchase and Sale Agreement and Equity Interest Assignment Agreement with Dr. Chaudhry, which has proximately caused injury to Dr. Chaudhry and caused Dr. Chaudhry to suffer damages.

117. By the conduct described herein, Defendant Baig has improperly and wrongfully combined, associated, agreed, mutually undertaken or acted in concert with Hashim, Dr. Ali Khan, and Xenon TX for the purpose of inducing Xenon TX to breach its Exclusive Management Services Agreement with Xenon, LLC, which has proximately caused injury to Xenon LLC and caused Xenon LLC to suffer damages.

118. By the conduct described herein, Defendant Baig has improperly and wrongfully combined, associated, agreed, mutually undertaken or acted in concert with Hashim, Dr. Ali Khan, and Xenon TX for the purpose of inducing Hashim to breach his Employment Agreement with Xenon, LLC, which has proximately caused injury to Xenon LLC and caused Xenon LLC to suffer damages.

21

119.  Defendant Baig's actions constitute a common law conspiracy to induce breach of contract for which he is liable to Xenon LLC and Dr. Chaudhry in an amount to be proven at trial.

120.  Defendant Baig's conduct evidences malice or such a reckless disregard for the rights of Xenon LLC and Dr. Chaudhry as to justify an award of punitive damages.

## REQUEST FOR JURY TRIAL

Plaintiffs Xenon LLC and Haroon Chaudhry respectfully request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)  Award, order and enter judgment in favor of Plaintiffs Xenon Health LLC and Haroon Chaudhry in the amount of Eight Million Two Hundred Fifty Thousand Dollars ($8,250,000.00) as compensatory and consequential damages to be determined by the jury;

(b)  Award, order and enter judgment in favor of Plaintiffs Xenon Health LLC and Haroon Chaudhry in the amount of One Million Dollars ($1,000,000.00) as punitive damages as determined by the jury;

(c)  Enter an order and judgment in favor of Plaintiffs Xenon Health LLC and Haroon Chaudhry trebling the damages awarded by the jury, and awarding the costs of this action, and attorneys' fees pursuant to Va. Code Ann. § 18.2-500;

(d)  Award such other relief as the Court deems just and proper.

22

DATE                                    XENON HEALTH LLC

February 22, 2013

Kevin F.X. DeTurris (VSB # 65400)
THE LAW OFFICES OF KEVIN F.X. DETURRIS, LLC
43948 Riverpoint Dr.
Leesburg, Virginia 20176
Phone: (571) 252-8081
Facsimile: (571) 252-8087
Email: kdeturris@deturrislaw.com
*Counsel for Plaintiffs*

23